1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ROBBIE POWELSON,                      Case No.  23-cv-01360-EMC

8                    Plaintiffs,

9           v.                             **ORDER GRANTING IN PART AND
                                           DENYING IN PART CITY
10   SAUSALITO POLICE DEPARTMENT, et       DEFENDANTS' MOTION TO DISMISS**
     al.,
11                                         Docket No. 23
                    Defendants.
12

13

14         Plaintiff Robert Powelson has filed suit against the City of Sausalito and several of its

15   employees (collectively, the "City Defendants").  The suit concerns the City Defendants'

16   responses to Mr. Powelson's conduct and activities in support of a homeless encampment, first

17   located at Dunphy Park and later Marinship Park in Sausalito.  Now pending before the Court is

18   the City Defendants' motion to dismiss.  Having considered the papers submitted, as well as the

19   oral argument of counsel and Mr. Powelson (proceeding pro se), the Court hereby **GRANTS** in

20   part and **DENIES** in part the motion to dismiss.[1]

21              I.      **FACTUAL & PROCEDURAL BACKGROUND**

22         This is the third lawsuit in which Mr. Powelson has been a litigant based on events related

23   to Dunphy and Marinship Parks.  The first suit (No. C-21-1143 EMC), filed in February 2021, was

24   brought by the Sausalito/Marin County Chapter of the California Homeless Union and various

25   individuals affiliated with the union, including Mr. Powelson.  The second suit (No. C-22-1809

26

27   _____
     [1] Mr. Powelson has voluntarily dismissed the Federal Defendants (*i.e.*, the United States, the U.S.
28   Army Corps of Engineers, and one of its employees).  *See* Docket No. 39 (notice of voluntary
     dismissal).  Thus, the Federal Defendants' motion to dismiss, *see* Docket No. 25 (motion), is
     moot.

EMC), filed in March 2022 was brought by Mr. Powelson alone. In that action, Mr. Powelson sought injunctive relief only. This pending action, filed in March 2023, was brought by Mr. Powelson alone. He now seeks declaratory relief and damages.

In the operative first amended complaint ("FAC"), Mr. Powelson alleges as follows. Generally speaking, there are five different instances in which the City Defendants have allegedly violated Mr. Powelson's rights.

A.    Incident on June 29, 2021 (Sgt. Vereios, Lt. Gregory, and Capt. Fraass)

This incident concerns three officers: Sgt. Vereios, Lt. Gregory, and Capt. Fraass.

On June 29, 2021, Mr. Powelson led a protest objecting to the closure of the encampment at Dunphy Park. *See* FAC ¶ 47. Mr. Powelson had advertised the protest on social and news media. He was clearly protesting as evidenced by his "waving political symbols" (a Camp Cormorant flag which "had become a symbol of local resistance") and "carr[ying] a bull horn to communicate." FAC ¶¶ 47, 51.

During the protest, Mr. Powelson saw a police officer, Sgt. Vereios, "become combative" with an elderly camper, Daniel Eggink. FAC ¶ 52. Because Mr. Powelson was "concerned" that the situation would escalate, he "got between [the two] with arms stretched out." FAC ¶ 54. Sgt. Vereios then arrested Mr. Powelson, charging him with "obstruction, inciting a riot, and illegal camping." FAC ¶ 56. Lt. Gregory and Capt. Fraass were present at the time, including during the arrest. *See* FAC ¶ 55; *see also* FAC ¶ 61 (alleging that Lt. Gregory and Capt. Fraass were direct supervisors of Sgt. Vereios, witnessed the incident, and "abetted it"). The police did not arrest anyone else during the protest. *See* FAC ¶ 57.

The Marin County D.A.'s Office did not pursue any charges against Mr. Powelson. *See* FAC ¶ 59.

Based on the above allegations, Mr. Powelson has asserted three causes of action against Sgt. Vereios, Lt. Gregory, and Capt. Fraass (in both their individual and official capacities). Sgt. Vereios and Capt. Fraass are not named as defendants in the caption or in the section of the FAC that discusses the named defendants. However, they are later specified as defendants in Counts 3 and 4.

- **Count 3:** False arrest.

- **Count 4:** First Amendment retaliation.

- **Count 12[2]:** Violation of due process.

B.   <u>First Incident on November 22, 2021 (Officer Mathers and Officer Mitchell)</u>

This incident concerns two officers: Officer Mathers and Officer Mitchell.

By November 2021, the encampment at Dunphy Park had closed and been relocated to Marinship Park.  During the rainy season, there was flooding at Marinship Park, and campers began to get sick because of contamination of the area by, *e.g.*, fecal matter.  *See* FAC ¶ 73.  Mr. Powelson asked the City to evacuate the camp and put campers into hotels.  After the City refused, Mr. Powelson and others began to "protest[] [the] dangerous conditions at [the camp] by sleeping in tents in public places outside of [Marinship Park]."  FAC ¶ 74.

On November 15, 2021, Mr. Powelson protested by sleeping in a tent at Dunphy Park.  Officers Mathers, accompanied by Officer Mitchell, approached Mr. Powelson and charged him with illegal camping.  (The D.A.'s Office never prosecuted.)  *See* FAC ¶ 75.  The next morning, the Sausalito Police Department put a notice on Mr. Powelson's tent, informing him that his tent would be "removed in 72 hours under [the] Sausalito Municipal Code."  FAC ¶ 76.  Mr. Powelson and others continued to camp in Dunphy Park for a few more nights and then moved their tents to Robyn Sweeny Park.  *See* FAC ¶ 77.

On November 20, 2021, Mr. Powelson's tent was at Robyn Sweeny Park.  The police again put a notice on his tent, informing him that he had 72 hours to vacate.  *See* FAC ¶ 78.

On November 22, 2021, Mr. Powelson and others set up their tents in a park in the downtown area.  Officer Mathers and Officer Mitchell again approached Mr. Powelson, and Officer Mathers stated that Mr. Powelson "would now be charged with an infraction."  FAC ¶ 78.  It appears that Officer Mitchell was the one who actually wrote the ticket for an infraction.  *See* FAC ¶ 79 (alleging that "Officer Mathers instructed his subordinate Mitchell to write an infraction ticket").

---

[2] The FAC contains *two* Count 11's.  The Court has labeled the second Count 11 as Count 12.

United States District Court
Northern District of California

Based on the above allegations, Mr. Powelson has asserted three causes of action against Officer Mathers and Officer Mitchell (in both their individual and official capacities).

- **Count 5:** Malicious prosecution.
- **Count 6:** First Amendment retaliation.
- **Count 12:** Violation of due process.

C.   <u>Second Incident on November 22, 2021 (Officer Georges, Officer White, and Officer Smgalski)</u>

This incident concerns three officers: Officer Georges, Officer White, and Officer Smgalski.

Also on November 22, 2021, several police officers seized Mr. Powelson's belongings (*e.g.*, tents, blankets), as well as the belongings of other people with whom he was camping.  The officers who did so were Officers Georges, White, and Smgalski.  *See* FAC ¶ 89.  The officers violated Sausalito's policy of giving 72 hours of notice before clearing an encampment.  *See* FAC ¶¶ 88-89.  When Mr. Powelson and the other individuals asked for their property to be returned, the officers refused.  *See* FAC ¶ 89.

In addition to the above, Mr. Powelson's rights were further violated when he acted to assist another camper, Holly Wild, who was trying to secure the return of an albuterol inhaler that she used for a chronic respiratory illness.  Mr. Powelson tried to "deescalate the situation" between the police and Ms. Wild by "moving towards [her] to try to coax her to let go of the tent she was struggling [over] with [Officer White]," and, "[w]ithout warning, Officer White arrested [him]."  FAC ¶ 93.  Furthermore, Officer Georges grabbed Mr. Powelson's throat while Officer White applied handcuffs.  Officer Smgalski "also grasped" Mr. Powelson.  FAC ¶ 93.  The Marin County D.A.'s Office "never pressed charges from the incident."  FAC ¶ 100.

Based on the above allegations, Mr. Powelson has asserted three causes of action against Officer Georges, Officer White, and Officer Smgalski (in both their individual and official capacities).

- **Count 7:** Unlawful seizure, false arrest, and excessive force.
- **Count 8:** First Amendment retaliation.

- **Count 12:** Violation of due process.

D.   Incident on March 15, 2022 (Det. Rose)

This incident concerns Det. Rose only.

On March 15, 2022, Mr. Powelson was "documenting [*i.e.* video recording] a raid on [the Marinship Park encampment], where police were seizing the tents, possessions, and vehicles of unhoused people living there." FAC ¶ 107. A parking enforcement officer towed two vehicles, neither belonging to Mr. Powelson. *See* FAC ¶ 111. Officer Mathers then asked for a DMV check on Mr. Powelson's vehicle. Officer Mathers saw that Mr. Powelson had 15 parking tickets that he was challenging. *See* FAC ¶ 114.

Although Officer Mathers could see that Mr. Powelson was appealing the tickets, the officer "used the tickets as a pretext to tow [Mr. Powelson's truck] and force him out of the camp so [that] he could not record" what was taking place. FAC ¶ 115. After the parking enforcement officer filled out the paperwork to impound Mr. Powelson's truck, she left the paperwork on the dash of her patrol vehicle. Mr. Powelson walked over to record the documents. When Mr. Powelson was about to record, he was attacked by Det. Rose, who "shoved [Mr. Powelson] at a running pace, nearly throwing [him] to the ground." FAC ¶ 116.

Based on the above allegations, Mr. Powelson has asserted three causes of action against Det. Rose (in both his individual and official capacities).

- **Count 9:** First Amendment retaliation.
- **Count 10:** Excessive force.
- **Count 12:** Violation of due process.

E.   Parking Tickets (Officer Mathers, Mr. Holt, and City)

Finally, Mr. Powelson has asserted a cause of action against three of the City Defendants – specifically, Officer Mathers, Mr. Holt, and the City – based on parking tickets that Mr. Powelson was issued.

As noted above, Officer Mathers ordered the towing of Mr. Powelson's truck on March 15, 2022. He did so even though he "knew or should have known [Mr.] Powelson was still waiting for a hearing for the parking ticket[s]." FAC ¶ 124.

United States District Court
Northern District of California

Mr. Powelson had sent "multiple emails" to Mr. Holt, the parking enforcement administrator, asking for a hearing on his parking tickets, but Mr. Holt ignored him.  Mr. Holt "knew or should have known that not providing [Mr. Powelson] with a hearing would cause him to be subject to being towed."  FAC ¶ 126.

Based on these allegations, Mr. Powelson has asserted the following cause of action against Officer Mathers, Mr. Holt, and the City:

- **Count 11:** Violation of procedural due process.

In addition to the above, Mr. Powelson seems to challenge as a violation of procedural due process the adjudicatory scheme related to parking tickets – *i.e.*, because the superior court declined to hear his appeal of the traffic referee's decision on the basis that "all appeals must be authorized by state statute, and . . . there was no state statute for an appeal on the traffic referee['] s ruling."  FAC ¶ 134.  Mr. Powelson also asserts that he was "deprived of [the] right to cross examine and confront witnesses, . . . subpoena evidence . . . , and other basic provisions of law."  FAC ¶ 136.

## II.     DISCUSSION

A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

6

effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks omitted).

B.    Counts Raising Both § 1983 and § 1985 Claims

For several of the counts above, Mr. Powelson has claimed a violation of his constitutional rights and sought relief based on not only 42 U.S.C. § 1983 but also § 1985.  Those counts are as follows:

- Counts 3 and 4 (Sgt. Vereios, Lt. Gregory, and Capt. Fraass) – based on an incident on June 29, 2021.
- Counts 5 and 6 (Officer Mathers and Officer Mitchell) – based on an incident on November 22, 2021.
- Counts 7 and 8 (Officer Georges, Officer White, and Officer Smgalski) – based on an incident on November 22, 2021.

Section 1985(3) provides for a claim for relief where:

> two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . .

42 U.S.C. § 1985(3).  Under § 1985(3), "a properly pleaded claim must include an allegation of racial or class-based animus.  To establish racial or class-based animus, a plaintiff must show 'invidiously discriminatory motivation . . . behind the conspirators' action.'"  *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) ("To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'").  The City Defendants argue that Mr. Powelson has failed to plead a claim for relief under § 1985(3) because he has not sufficiently alleged race- or class-based animus.  *See* Mot. at 12 (arguing that, even if Mr.

United States District Court
Northern District of California

1   Powelson is considered "a 'political activist,' 'unhoused person' or 'pro se litigant,' none of those

2   are protected classes for § 1985 purposes").  *See, e.g.*, *Martin v. City of Los Angeles*, No. CV 20-

3   11828 TJH (PVC), 2023 U.S. Dist. LEXIS 20777, at *20 (C.D. Cal. Jan. 5, 2023) (stating that

4   "Plaintiff's § 1985(3) claim . . . fails because it is predicated on Plaintiff's status as a homeless

5   person, not his race, and the homeless are not a suspect class"); *cf. Joel v. City of Orlando*, 232

6   F.3d 1353, 1357 (11th Cir. 2000) (in addressing an equal protection claim, stating that "[h]omeless

7   persons are not a suspect class, nor is sleeping out-of-doors a fundamental right"); *Sanchez v. City*

8   *of Fresno*, 914 F. Supp. 2d 1079, 1108 (E.D. Cal. 2012) (in addressing an equal protection claim,

9   stating that "no court has ever held the homeless to be a suspect class").

10          In his opposition, Mr. Powelson essentially concedes that he has failed to plead a claim for

11   relief under § 1985(3).  Furthermore, he does not make any argument that he could amend his

12   complaint to state a claim for relief under the statute.  *See, e.g.*, Opp'n at 10 ("My intention with

13   the § 1985 claims was to indicate that their [sic] was a conspiracy between the officers between

14   during [sic] the incidents. . . . Therefore, I can voluntarily dismiss the 42 USC § 1985 claims – but

15   the basic premise of conspiracy between the different officers still survives under 42 USC §

16   1983."); *see also* Docket No. 38 (notice) (Mr. Powelson stating that he is dismissing his claim

17   under "§ 1985 against Sausalito with prejudice").  **Accordingly, the Court grants the motion to**

18   **dismiss the counts above to the extent they are based on § 1985(3)**.

19          To the extent Mr. Powelson maintains that he has a claim for conspiracy under § 1983, he

20   is correct that "'[i]t is permissible to state a civil cause of action for conspiracy, based on § 1983.'"

21   *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  In its reply brief, however, the City argues

22   that Mr. Powelson "has made no showing supporting the elements of such a cause of action."

23   Reply at 14; *see also Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992) (stating

24   that complaint failed to "allege specific facts to support the existence of a conspiracy among the

25   defendants"); *Bonnette v. Dick*, No. 1:18-cv-0046-DAD-BAM, 2020 U.S. Dist. LEXIS 108896, at

26   *9 (E.D. Cal. June 22, 2020) (in discussing claim for conspiracy under § 1983, stating that

27   "[c]onspiracy allegations must be more than mere conclusory statements").

28          Presumably, by this, the City means that Mr. Powelson has failed to sufficiently plead an

agreement to violate his civil rights.  *See Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) (indicating that, to prove a conspiracy under § 1983, "an agreement or 'meeting of the minds' to violate constitutional rights must be shown"); *Lalonde v. City of Ogdensburg*, No. 8:22-CV-0164 (LEK/DJS), 2023 U.S. Dist. LEXIS 44122, at *38 (N.D.N.Y. Mar. 16, 2023) (stating that, "'[t]o prevail on a Section 1983 conspiracy claim, the plaintiff must establish: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages'"); *Bonnette*, 2020 U.S. Dist. LEXIS 108896, at *9 (stating that, for a § 1983 conspiracy claim, a "[p]laintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy").  The problem for the City is that this argument was raised for the first time in reply – *i.e.*, the City never argued that there was a failure to plead the elements of a conspiracy in its opening brief.  **The Court therefore does not entertain the City's challenge to the conspiracy allegation.**

C.    Named Defendants

       On pages 5 through 6 of his complaint, Mr. Powelson lists out the names of ten City Defendants and gives a brief description of each.  (This list is consistent with the caption of his complaint.)

       (1)    The Sausalito Police Department.

       (2)    The City.

       (3)    Corporal Brian Mathers.

       (4)    Sgt. Thomas Georges.

       (5)    Corporal Nick White.

       (6)    Officer Sean Smgalski.

       (7)    Officer Bryce Mitchell.

       (8)    Officer Davin Rose.

       (9)    Lt. Stacie Gregory.

       (10)   Chief John Rohrbacher.

Mr. Powelson does not include in this list (or in the caption of the complaint) the following

persons:

      (11)    Sgt. Steven Vereios.

      (12)    Capt. Bill Fraass.

      (13)    Elliott Holt.

However, those three persons are *later* identified in the complaint when Mr. Powelson pleads his specific causes of action. For example, for Counts 3 and 4, Sgt. Vereios and Capt. Fraass are both identified as persons against whom the claims are asserted.

In their motion, the City Defendants ask the Court to dismiss Counts 3 and 4 because Mr. Powelson has failed to clearly assert that Sgt. Vereios and Capt. Fraass are named defendants. Likewise, the City Defendants seek dismissal of Count 11 because Mr. Powelson has failed to clearly assert that Mr. Holt is a named defendant. The City Defendants maintain that the Court should dismiss under Federal Rule of Civil Procedure 12(b)(7) – *i.e.*, for failure to join persons (Sgt. Vereios, Capt. Fraass, and Mr. Holt) whose presence is needed for just adjudication under Rule 19.

**The Court denies the motion to dismiss, as well as the alternative motion to compel Mr. Powelson to amend his complaint and join the individuals at issue**. The Court liberally construes Mr. Powelson's complaint given his pro se status. Even though Mr. Powelson may not have formally included Sgt. Vereios, Capt. Fraass, and Mr. Holt in his list of defendants or in the caption of the complaint, it is clear from the pleading that he intended to sue them for alleged misconduct.

The Court notes that it appears summons were not issued for Sgt. Vereios, Capt. Fraass, and Mr. Holt. *See* Opp'n at 10 (conceding such). However, this problem is curable and, presumably, counsel for the City Defendants will be representing these individuals as well such that counsel can accept service on their behalf. The Court expects the parties to meet and confer to resolve the issue of service.

D.    <u>False Arrest and Excessive Force Claims – Qualified Immunity</u>

The bulk of Mr. Powelson's claims are claims for First Amendment retaliation. However, he has also included other constitutional claims such as false arrest, violation of due process,

United States District Court
Northern District of California

malicious prosecution, unlawful seizure, and excessive force.  The City Defendants have moved for dismissal of some of those claims based on qualified immunity.  Specifically, they argue that Count 3 (false arrest), Count 7 (false arrest), and Count 7 (excessive force) should be dismissed pursuant to that doctrine.[3]

- Count 3 (Sgt. Vereios, Lt. Gregory, and Capt. Fraass) – based on an incident on June 29, 2021.  This is the incident in which Mr. Powelson was arrested after he (as alleged) tried to deescalate a situation between Sgt. Vereios and an elderly camper, Mr. Eggink.  FAC ¶ 52.  Mr. Powelson was charged with "obstruction, inciting a riot, and illegal camping."  FAC ¶ 56.  The D.A.'s Office did not pursue any charges.

- Count 7 (Officer Georges, Officer White, and Officer Smgalski) – based on the second incident on November 22, 2021.  This is the incident in which Mr. Powelson (as alleged) tried to deescalate a situation between the officers and another camper, Ms. Wild.  According to Mr. Powelson, Officer White arrested him without warning, and Officer Georges grabbed his throat while Officer White applied handcuffs.  In addition, Officer Smgalski "grasped" Mr. Powelson.  FAC ¶ 93.  The Marin County D.A.'s Office "never pressed charges from the incident."  FAC ¶ 100.

1. <u>Legal Standard for Qualified Immunity</u>

> Qualified immunity is an affirmative defense that shields public officials facing liability under 42 U.S.C. § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time" of the violation.  [A court has] discretion to decide which question to consider first.

*Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1112 (9th Cir. 2020).

With respect to the second element,

---

[3] There is another excessive force claim (Count 10) for which the City Defendants do not seek dismissal based on qualified immunity.  They do seek dismissal of that claim, however, on other grounds.

United States District Court
Northern District of California

> [a] right is clearly established when its "contours [are] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." A clearly established right is one that has a "sufficiently clear foundation in then-existing precedent." That is, the rule must be "settled law," meaning it is "dictated by controlling authority or a robust consensus of cases of persuasive authority." There need not be a "case directly on point," but existing precedent must place the statutory or constitutional question "beyond debate." The Supreme Court has repeatedly instructed us not to define clearly established law at a high level of generality. [¶] "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts."

*Id.* at 1112-13.

In the instant case, the Court bears in mind that the City Defendants are making a qualified immunity argument at the 12(b)(6) stage, and not at summary judgment.

> [R]esolving claims of qualified immunity at the motion-to-dismiss stage can sometimes present "special problems for legal decision making," particularly when we are "aided only by the skeletal . . . factual picture sketched out in the complaint." Thus, it is understandable that district courts sometimes delay a decision on qualified immunity until the parties have had the opportunity to develop a more comprehensive factual record.

*Mohamed Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892 (9th Cir. 2022). "[A] Rule 12(b)(6) dismissal based on qualified immunity 'is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *Id.* at 893; *see also Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022) ("Because they turn on a fact-bound inquiry, 'qualified immunity defenses are typically resolved at the summary judgment stage' rather than on a motion to dismiss. . . . On a motion to dismiss, 'it is the defendant's conduct *as alleged in the complaint* that is scrutinized for [constitutionality].'") (emphasis in original).

2.    False Arrest Claims (Counts 3 and 7)

"The absence of probable cause is a necessary element of a § 1983 false arrest . . . claim[]." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). The City Defendants argue that, for the false arrest claims (Counts 3 and 7), it was not clearly established that probable cause was lacking based on the allegations as pled in the complaint. According to the City Defendants, there is no

> precedent holding an officer liable . . . for arresting someone for
> obstruction when they intervened between an officer and another
> person, under similar circumstances to this case. . . . In fact,
> although not decided by the U.S. Supreme Court or Ninth Circuit . .
> . , precedent exists for the opposite finding – that willfully standing
> between a police officer and person to whom the officer was writing
> [the] citation was [a] basis for finding that [the] defendant
> obstructed the officer in lawful performance of their duties. *People
> v. Williams*, 26 Cal. App. 5th 71, 236 . . . (2018).

Mot. at 16.

Mr. Powelson argues that qualified immunity does not apply here because the relevant officers had no probable cause to arrest him. In his opposition, he asserts that he was not engaging in any wrongdoing but was simply engaging in speech to challenge the officers and support Mr. Eggink and Ms. Wild.

For the incident involving Mr. Eggink, the Court finds that qualified immunity does obtain, at least in part. Specifically, to the extent Mr. Powelson was arrested for obstruction,[4] there is qualified immunity. His complaint contains no allegations about verbal challenges or criticisms. Rather, the complaint contains allegations that Mr. Powelson physically interjected himself between Mr. Eggink and a police officer. *See, e.g.*, FAC ¶¶ 52-53 (alleging that Sgt. Vereios became combative with Mr. Eggink and was walking toward him in an aggressive manner; that Mr. Eggink was walking away from Sgt. Vereios to get away; that both men were agitated; and that "Plaintiff was concerned that Sergeant Vereios and Eggink would escalate the situation, and so Plaintiff got between Eggink and Vereios with arms stretched out, as Eggink was walking away"). Given that Mr. Powelson physically interjected himself, there was probable cause for the police to arrest him for obstruction, and this necessarily means there is qualified immunity (*i.e.*, no clearly established violation of a constitutional right). It is irrelevant that Mr. Eggink was not – as claimed by Mr. Powelson – suspected of committing a crime. The issue is whether the police were acting to discharge their duties. Mr. Powelson has made no allegations that, *e.g.*, the police were doing something unlawful. *Cf. Hill v. City of Fountain Valley*, 70 F.4th 507, 516 (9th Cir.

---

[4] *See* Cal. Pen. Code § 148(a)(1) (providing that "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished by a fine . . . or by imprisonment").

United States District Court
Northern District of California

2023) (citing cases where qualified immunity was denied – "situations in which it was clear the plaintiff's action was not an obstruction, the refusal [to cooperate] was only verbal, or the plaintiff was obstructing an unlawful police act"). **Accordingly, the Court finds that, based on the allegations in the complaint, there is qualified immunity for the arrest based on obstruction. Mr. Powelson has leave to amend if he can do so in good faith.**

On the other hand, the Court bears in mind that, for the Eggink situation, it appears that Mr. Powelson was arrested not only for obstruction but also for inciting a riot and illegal camping. Nothing about his stepping between Mr. Eggink and the police would support inciting a riot and illegal camping. **Accordingly, at this juncture, the Court finds no qualified immunity with respect to the arrest for inciting a riot and illegal camping, at least based on the allegations in the complaint.**

**As for the situation involving Ms. Wild, the Court rejects the City Defendants' argument that there is qualified immunity based on the facts alleged in the complaint.** It appears that Mr. Powelson was arrested once again for obstruction. But unlike the situation with Mr. Eggink, there are no allegations that Mr. Powelson physically interjected himself in between Ms. Wild and the police. *See, e.g.*, Compl. ¶ 91-92 (alleging that Ms. Wild's property have been seized, including her albuterol inhaler; that the police would not return the property; and that "Plaintiff tried to deescalate the situation, moving towards Holly Wild to try to coax her to let go of the tent she was struggling [over] with [with Officer] White and avoid her being arrested and to convince the Officers to release her property to her"). The Court acknowledges that, "where probable cause is a close call, qualified immunity becomes a factor." *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1168 (N.D. Cal. 2019). But at least based on the allegations in the complaint, which the Court must construe in Mr. Powelson's favor, there is not a close call.

Accordingly, the Court rules as follows:

- The motion to dismiss Count 3 is granted in part and denied in part. To the extent Mr. Powelson was arrested for obstruction, it was not clearly established that the officers lacked probable cause to arrest; in fact, based on the allegations in the complaint, the police had probable cause to arrest. Thus, this part of Count 3

warrants dismissal, but Mr. Powelson has leave to amend.  To the extent Mr.

Powelson was arrested for inciting a riot and illegal camping, there is no qualified

immunity.  This does not preclude the City Defendants from raising qualified

immunity at a later stage of the proceedings.

- The motion to dismiss Count 4 is denied.  Based on the allegations in the

  complaint, there is not a close call on probable cause, and therefore qualified

  immunity does not obtain.  As above, this does not preclude the City Defendants

  from raising qualified immunity at a later stage of the proceedings.

3.     Excessive Force Claim (Count 7)

With respect to a claim for excessive force, the Ninth Circuit has noted as follows:

> We approach an excessive force claim in three stages.  First, we
> "assess the severity of the intrusion on the individual's Fourth
> Amendment rights by evaluating the type and amount of force
> inflicted."  Then, we evaluate the government's interests by
> assessing the severity of the crime; whether the suspect posed an
> immediate threat to the officers' or public's safety; and whether the
> suspect was resisting arrest or attempting to escape.  Finally, we
> "balance the gravity of the intrusion on the individual against the
> government's need for that intrusion."

*Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018).

For Mr. Powelson's excessive force claim (Count 7), the City Defendants make an

argument similar to that above, *i.e.*, that there is no

> precedent holding an officer liable . . . for grabbing a person's
> throat, under similar circumstances to this case. . . .
>
> Although once again merely persuasive, precedent exists countering
> Powelson's claim.  "We agree that the 'application of force to a
> person's throat is a dangerous and sensitive activity' and that it 'is
> the type of force that, more than any other, is likely to result in
> violent resistance,' but the application of such force is not . . . per se
> unreasonable, excessive, or a threat to a defendant's health or
> safety."  *People v. Cappellia*, 208 Cal. App. 3d 1331, 1338, 256 Cal.
> Rptr. 695, 699 (Ct. App. 1989) (quoting *People v. Trevino*, *supra*,
> 72 Cal. App. 3d at p. 692, 140 Cal. Rptr. 243).

Mot. at 16-17.

Surprisingly, Mr. Powelson did not raise a substantive argument with respect to the

excessive force claim.  *See* Opp'n at 7 (addressing only the false arrest aspect of the Wild incident,

15

and not the excessive force aspect).  Accordingly, the Court deems any argument waived and dismisses the claim with prejudice.  Although Mr. Powelson is pro se, he is at this point a fairly experienced litigator; certainly, he has sufficient experience to understand the consequences of a failure to oppose.

E.    First Amendment Retaliation Claims – Probable Cause

In Counts 4, 6, and 8, Mr. Powelson has asserted claims for First Amendment retaliation.

- Count 4 concerns the incident in which Mr. Powelson allegedly tried to deescalate a situation between the police and Mr. Eggink (another camper).

- Count 6 concerns the incident in which Mr. Powelson was cited for an infraction after he put up his tent and camped in the downtown area.

- Count 8 concerns the incident in which Mr. Powelson allegedly tried to deescalate a situation between the police and Ms. Wild (another camper).

The City Defendants argue each of the retaliation claims should be dismissed for failure to allege a lack of probable cause.

The predicate for the City Defendants' argument is the Supreme Court case *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).  There, the Supreme Court held that, where a plaintiff brings a First Amendment retaliation claim based on a retaliatory arrest (similar to a retaliatory prosecution), the plaintiff must first plead and prove the absence of probable cause.  *Id.* at 1724.  "[I]f the plaintiff establishes the absence of probable cause, 'then . . . [t]he plaintiff  must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation.'"  *Id.* at 1725; *see also id.* at 1722 ("It is not enough to show that an official acted with a retaliatory motive and the plaintiff was injured – the motive must *cause* the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.").  However, if there is probable cause for an arrest, then, as a general matter, a claim for a retaliatory arrest must fail.  *See id.* at 1727 ("[P]robable cause should generally defeat a retaliatory arrest claim . . . .").

The *Nieves* Court, however, did identify one exception where a plaintiff did not have to

plead and prove an absence of probable cause.

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, *but typically exercise their discretion not to do so*.  In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech."

*Id.* at 1727 (emphasis added).  Therefore, a plaintiff need not plead and prove the absence of probable cause "when [the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals *not* engaged in the same sort of protected speech had not been.  That showing addresses [the] causal concern by helping to establish that 'non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." *Id.* (emphasis added).

> 1.   Counts 4 and 8

For the First Amendment retaliation claims in Counts 4 and 8, the City Defendants argue that, based on the allegations in the complaint, there was probable cause to arrest Mr. Powelson because he came in between the police and another camper (Mr. Eggink and Ms. Wild, respectively).  In its reply brief, the City Defendants also point out that Mr. Powelson did not directly address their argument on Counts 4 and 8.  Although, as a formal matter, this seems to be true, it would be hypertechnical to dismiss on this procedural ground – especially when Mr. Powelson took the position on the false arrest claims in Counts 3 and 7 (the causes of action affiliated with Counts 4 and 8) that qualified immunity did not apply because there was clearly a lack of probable cause.

**The Court dismisses Count 4 in part because, as discussed above, there was probable cause to arrest Mr. Powelson for obstruction during the Eggink situation, and there are no factual allegations that would establish the exception under *Nieves* here;  but Mr. Powelson has leave to amend if he can do so in good faith.  However, there does not appear to have been probable cause to arrest Mr. Powelson for inciting a riot or illegal camping (at least based on the allegations in the complaint).**

**The Court does not dismiss Count 8 because there is at least a question of fact as to whether the police had probable cause to arrest Mr. Powelson for obstruction during the**

**Wild situation.** *See McKenzie v. Lamb*, 738 F.2d 1005, 1007-08 (9th Cir. 1984) ("[I]n a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury; and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to [act].").

  2. <u>Count 6</u>

  For Count 6, the City Defendants note that it is not clear from the complaint what infraction was cited but, assuming that the infraction was illegal camping, they argue that there was probable cause to support such – *i.e.*, because the preliminary injunction that this Court issued in the *Sausalito* case only applied to Dunphy Park (and then Marinship Park) and did not bar the City from citing for illegal camping elsewhere.[5]

  In response, Mr. Powelson does not dispute that he was cited for illegal camping. He contends, however, that there was First Amendment retaliation because the police knew that his camping was a form of protest activity and because the *Nieves* exception applies such that he need not plead and prove the absence of probable cause for the citation. Mr. Powelson notes that, in the days before he was cited, the police simply issued notices to vacate when the protestors camped outside of Dunphy or Marinship Park, but did not cite anyone (including Mr. Powelson). According to Mr. Powelson, the police "changed their tactic once our expressive activities were gaining momentum and had entered into the downtown." Opp'n at 6.

  Mr. Powelson asserts the *Nieves* exception applies because only he, and not others were subject to the citations. The City, however, has a valid argument as to why the *Nieves* exception does not apply. That is, in *Nieves*, the Supreme Court stated that a plaintiff need not plead and prove the absence of probable cause "when [the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals *not* engaged in the same sort of protected speech had not been. That showing addresses [the] causal concern by helping to establish that 'non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." *Nieves*, 139 S. Ct. at 1727 (emphasis added).

[5] *See Sausalito/Marin County Chapter of the Cal. Homeless Union v. City of Sausalito*, No. C-21-1143 EMC (N.D. Cal.) (Docket Nos. 20, 48) (preliminary injunction orders).

United States District Court
Northern District of California

> Powelson has not presented objective evidence that other unhoused people *who were not protesting or engaging in the same expressive conduct* were not given citations for illegal camping, while he was. All he has shown is that SPD officers decided not to issue citations against *protestors*, including himself, at the Dunphy and Robyn Sweeney Park *protest campsites* until they moved into the downtown area. These individuals were still engaged in the same protected activity that he was, and therefore, does not evidence differential treatment based on his protected speech.

Reply at 15 (emphasis in original).

The Court, therefore, dismisses this First Amendment retaliation claim but with leave to amend.

F.     Malicious Prosecution Claim – Favorable Termination

In Count 5, Mr. Powelson asserts a claim for malicious prosecution. The factual predicate for this claim is his being cited for an infraction after camping in the downtown area as a form of protest.[6] In its opening brief, the City Defendants argued that this claim should be dismissed because he has failed to plead an essential element – *i.e.*, a favorable termination. *See Mills v. City of Covina*, 921 F.3d 1161, 1168 (9th Cir. 2019) (noting that, for a § 1983 malicious prosecution claim, "[f]ederal courts rely on state common law" for the elements of the claim; "California law requires a plaintiff . . . to establish 'that the prior action (1) was commenced by or at the direction of the defendant was pursued to a legal termination in his, plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice," plus that the prosecution was for the purpose of denying the plaintiff equal protection or another specific constitutional right). The City Defendants implicitly acknowledge the allegation in Mr. Powelson's complaint that "Plaintiff would ultimately not be found guilty of the charges." FAC ¶ 80. However, they contend that Mr. Powelson must plead more – *i.e.*, something to indicate that he was factually innocent of the charge. *See* Mot. at 22 (arguing that "[t]he touchstone is whether or not Powelson was entirely absolved of the conduct underpinning the arrest or infraction, not whether the case was terminated

---

[6] For purposes of this opinion, the Court assumes that being cited for an infraction can be a criminal prosecution. *Cf. Shatford v. L.A. Cnty. Sheriff's Dep't*, No. CV 15-1767 BRO (AJW), 2016 U.S. Dist. LEXIS 52473, at *65 (C.D. Cal. Mar. 29, 2016) ("assuming that an infraction under the Vehicle Code satisfies the elements of a 'criminal prosecution' for purposes of a malicious prosecution claim"). Neither party has addressed this issue.

for some other reason[;] [a]bsent a showing that the dismissal reflected the District Attorney's assessment that the case lacked merit, rather than an assessment that the DA's office's resources would be better allocated elsewhere, Powelson's argument that the action was terminated in his favor is lacking").

In response, Mr. Powelson points to a Supreme Court decision from 2022, *Thompson v. Clark*, 142 S. Ct. 1332 (2022). There, the Supreme Court noted as follows:

> To maintain [a] Fourth Amendment claim [for malicious prosecution] under §1983, a plaintiff . . . must demonstrate, among other things, that he obtained a favorable termination of the underlying criminal prosecution. This case requires us to flesh out what a favorable termination entails. Does it suffice for a plaintiff to show that his criminal prosecution ended without a conviction? Or must the plaintiff also demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient?
>
> We conclude as follows: To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.

*Id.* at 1335; *see also id.* at 1339 (indicating that "a plaintiff could maintain a malicious prosecution claim when, for example, the prosecutor abandoned the criminal case or the court dismissed the case without providing a reason").

In their reply brief, the City Defendants do not have any real response, and they revert instead to a new argument – *i.e.*, that the malicious prosecution claim is deficient because there was probable cause to support the citation for illegal camping. Although technically this is a new argument, the Court recognizes that Count 5 (malicious prosecution) and Count 6 (First Amendment retaliation) are related claims, and the City Defendants did raise a probable cause argument for Count 6 (as discussed above). **Accordingly, the Court dismisses Count 5 (as it did with Count 6) because Mr. Powelson has failed to plead a lack of probable cause. The dismissal is with leave to amend.**

G.   Unlawful Seizure – Standing

Count 7 is in part a claim for unlawful seizure. It is related to the incident in which Mr. Powelson allegedly tried to deescalate a situation between the police and Ms. Wild. As alleged,

Mr. Powelson tried to intervene while Ms. Wild and the police were struggling over her property. The City Defendants move to dismiss the unlawful seizure claim on the basis that Mr. Powelson lacks standing – *i.e.*, it was Ms. Wild's property at issue and not his. **The Court rejects this argument because the City Defendants ignore other allegations in the complaint from which it can reasonably be inferred that Mr. Powelson's property was seized as well.** *See* FAC ¶ 89 (alleging that the tents and blankets of the campers were seized, and Mr. Powelson, as alleged earlier, was a camper).

In their reply brief, the City Defendants do not raise much of a response but instead raise a new argument – invoking qualified immunity. **The Court rejects the qualified immunity argument since it was not previously raised.** The Court also notes that, given the allegations in the complaint, the qualified immunity argument seems weak. *See, e.g.*, FAC ¶ 90 (alleging that the officers lacked probable cause "to take the tents, because Sausalito policy was to post for 72 hours before abating a camp").

H.   Claims Related to Parking Tickets – Court's Prior Order

In Counts 9, 10, and 11, Mr. Powelson asserts claims for First Amendment retaliation, excessive force, and violation of procedural due process. They are factually related (at least to some degree) as they all concern parking tickets. Specifically, they are all are predicated on an incident in which the police were going to tow Mr. Powelson's truck based on parking tickets, even though he was appealing them, and Mr. Powelson was allegedly attacked by Det. Rose.

For each of these counts, the City Defendants argue that they should be dismissed because of a Court order issued in Mr. Powelson's earlier case (No. C-22-1809 EMC, his individual case) in which he sought only injunctive relief. There, the Court stated as follows:

> [T]he Court does agree with the City that Mr. Powelson lacks standing to proceed with his individual suit and/or that his individual suit is moot. With respect to standing, Mr. Powelson has sought only injunctive relief in his complaint. For injunctive relief, Mr. Powelson must show that there is a threat of future injury – and that the threatened injury is certainly impending or that there is a substantial risk that harm will occur. *See Wright v. SEIU*, 48 F.4th 1112, 1118 (9th Cir. 2022). Now that the encampment is closed, Mr. Powelson has not demonstrated a likelihood of future injury in connection with the conduct alleged in the complaint. Thus, his individual suit is moot.

The Court acknowledges that, at the hearing, Mr. Powelson indicated for the first time that he may be considering a suit for damages. However, based on his statements at the hearing, that mostly appears to be based on other alleged misconduct by the City and/or its employees, and not the specific alleged misconduct here (*e.g.*, being prevented from entering the encampment, being threatened with a ticket, and nearly being pushed off of his feet by an officer).

Accordingly, the Court hereby **GRANTS** the City's motion to dismiss.  Although the motion to dismiss has formally been brought by the City alone, the reasoning of this Court's order applies to all City employees and therefore the Court dismisses not just the City but all City employees as well.  The Court notes that Mr. Powelson has sued one private actor, the Citation Processing Center, but it is not alleged to have engaged in any wrongdoing itself.  Accordingly, all Defendants are dismissed, and the entirety of this case is now resolved.  To be clear, although this case against the City and its employees is resolved, the Court is not opining of the merits of the claims against the City and its employees, and the Court is dismissing the claims against them in this suit based on jurisdictional grounds.  The Court's ruling here does not preclude Mr. Powelson from filing suit against the City based on other alleged misconduct.

*Powelson v. City of Sausalito*, No. C-22-1809 EMC (N.D. Cal.) (Docket No. 90) (Order at 1-2).

The City Defendants argue that the Court's order permitted Mr. Powelson to bring suit based on *different* conduct – *i.e.*, not anything related to the incident in which he was allegedly threatened with a tow and then attacked by Det. Rose.  Although the Court is not without some sympathy for the City Defendants' contention, it rejects their position.  The test here is not whether the Court's *statement* bars Mr. Powelson from bringing claims based on the same factual predicate; the test is whether there is *claim preclusion*.  The Court's prior order was predicated on jurisdictional grounds, not the merits.  It appears that, where there is a dismissal based on Article III standing, there is no final judgment on the merits, an essential element of res judicata.  *See Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 521 (6th Cir. 2011) (finding that res judicata did not bar litigation of claims that had previously been dismissed for lack of standing). *Compare Hassanati v. Int'l Lease Fin. Corp.*, 738 F. App'x 443, 444 (9th Cir. 2018) (finding that where court granted summary judgment because plaintiffs lacked statutory standing, rather than Article III standing, court intended to render a final judgment on the merits, and res judicata was appropriate).

United States District Court
Northern District of California

**The Court therefore does not dismiss any of the counts at issue, with one exception.** As noted above, in part of Count 11, Mr. Powelson appears to challenge as a violation of procedural due process the adjudicatory scheme related to parking tickets. *See* FAC ¶ 134 (alleging that the superior court declined to hear his appeal of the traffic referee's decision on the basis that "all appeals must be authorized by state statute, and . . . there was no state statute for an appeal on the traffic referee['s ruling"); FAC ¶ 136 (alleging that he was "deprived of [the] right to cross examine and confront witnesses, . . . subpoena evidence . . . , and other basic provisions of law"). **The City Defendants are not a part of this adjudicatory scheme; accordingly, the Court dismisses this specific part of Count 11 (although not the remainder for the reasons stated above**).

I.    <u>Count 12</u>

Finally, the City Defendants move for dismissal of Count 12 (*i.e.*, the second "Count 11"), which simply incorporates all preceding paragraphs and then alleges that all Defendants deprived him of due process. The City Defendants argue that the claim is conclusory and therefore fails.

As noted by the City Defendants, Mr. Powelson has failed to address Count 12 in his opposition brief. **Thus, Mr. Powelson has waived his right to challenge dismissal of Count 12, and the Court dismisses the claim with prejudice.** Even if he had not, the Court agrees that Count 12 on its face is problematic in that it is conclusory, or at the very least vague. Furthermore, the Court has concerns that what Mr. Powelson may be trying to do here is make a due process claim based on, *e.g.*, the alleged false arrests, excessive force, and unlawful seizure. But

> [t]he Supreme Court has long held that certain substantive due process claims might be precluded if the same claims could be decided under an "explicit textual source of constitutional protection" rather than under the "generalized notion of 'substantive due process . . . .'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). In other words, under the *Graham* rule, a substantive due process claim will be preempted if the asserted substantive right can be vindicated under a different – and more precise – constitutional rubric.

*Action Apt. Ass'n v. Santa Monica Rent Control Opinion Bd.*, 509 F.3d 1020, 1024-25 (9th Cir. 2007). In *Graham* itself, the Supreme Court held that "all claims that law enforcement officers

*United States District Court*
*Northern District of California*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted).

### III.        CONCLUSION

For the reasons discussed above, the Court rules as follows.

- All § 1985 claims are dismissed with prejudice.
- Incident involving deescalation of situation between the police and Mr. Eggink.
  - Count 3 – false arrest.  The false arrest claim is dismissed in part, specifically, to the extent Mr. Powelson was arrested for obstruction.  There was probable cause for the arrest, and therefore there is qualified immunity, but Mr. Powelson has leave to amend if he can do so in good faith.  To the extent Mr. Powelson was arrested for inciting a riot and illegal camping (as opposed to obstruction), qualified immunity has not been established.  This claim remains viable, although the City Defendants are not barred from raising qualified immunity at a later stage.
  - Count 4 – First Amendment retaliation.  Count 4 is dismissed in part with prejudice, *i.e.*, because there was probable cause to arrest Mr. Powelson for obstruction, but Mr. Powelson has leave to amend if he can do so in good faith.  To the extent Mr. Powelson was arrested for inciting a riot and illegal camping, the count remains viable.
- Incident involving infraction for illegal camping.
  - Count 5 – malicious prosecution.  The count is dismissed because Mr. Powelson has failed to plead an absence of probable cause.  Mr. Powelson has leave to amend.
  - Count 6 – First Amendment retaliation.  The count is dismissed with leave to amend, for the same reasons as stated above; also, Mr. Powelson has failed to plead that the *Nieves* exception applies.
- Incident involving deescalation of situation between the police and Ms. Wild.

1      o   Count 7 – unlawful seizure, false arrest, and excessive force.  The motion to

2          dismiss the unlawful seizure claim and the false arrest claim is denied.  The Court

3          grants the motion to dismiss the excessive force claim based on a failure to oppose;

4          the dismissal is with prejudice.

5      o   Count 8 – First Amendment retaliation.  The motion to dismiss is denied.

6   •   Incident involving attack by Det. Rose.

7      o   Count 9 – First Amendment retaliation.  The motion to dismiss is denied.

8      o   Count 10 – excessive force.  The motion to dismiss is denied.

9   •   Incident related to parking tickets.

10     o   Count 11 – procedural due process.  The motion to dismiss is granted to the extent

11         Mr. Powelson challenged the adjudicatory scheme related to parking tickets.

12  •   Count 12 – due process.  The claim is dismissed with prejudice for failure to oppose.

13     Except where there is a dismissal with prejudice, Mr. Powelson has leave to amend to

14  correct the deficiencies identified above, if he can do so in good faith.  Mr. Powelson shall file an

15  amended complaint by December 6, 2023.  If Mr. Powelson does not file an amended complaint,

16  then the City Defendants shall file an answer by December 20, 2023.

17     This order disposes of Docket No. 23.

18     **IT IS SO ORDERED**.

19

20  Dated: November 8, 2023

21

22  _____

23  EDWARD M. CHEN
    United States District Judge

24

25

26

27

28